IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 98-30942
_____

CARRIE BADON; RAY BADON; RUSSELL BADON; JOE MAE
BADON-ROBERSON; SCOTTY JOSEPH BADON,

                                      Plaintiffs-Appellants,

        versus

R J R NABISCO INC; LIGGETT & MEYERS TOBACCO CO; AMERICAN
BRANDS INC; PHILIP MORRIS COMPANIES INC; B A T INDUSTRIES,
LTD; PELICAN CIGAR CO; MALONE & HYDE INC; SCHLESINGER
WHOLESALERS & AUTOMOTIVE CIGARETTE SERVICE INC; PHILIP
MORRIS INC; R J REYNOLDS TOBACCO CO; BROWN & WILLIAMSON
TOBACCO CO; BATUS HOLDINGS INC; AMERICAN TOBACCO
CO; LIGGETT GROUP INC; BROOKE GROUP LIMITED; HILL & KNOWLTON
INC; TOBACCO INDUSTRY RESEARCH COMMITTEE; COUNCIL FOR TOBACCO
RESEARCH USA INC; TOBACCO INSTITUTE INC; FORTUNE BRANDS INC;
LIGGETT & MYERS INC,

                                      Defendants-Appellees.

_____

Appeal from the United States District Court
for the Western District of Louisiana
_____

December 21, 2000

Before KING, Chief Judge, GARWOOD and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

    In this interlocutory appeal under 28 U.S.C. § 1292(b),
plaintiffs-appellants, Carrie Badon and certain of her relatives,
challenge the district court's order overruling their motion to
remand this removed suit to the Louisiana court in which it was

filed.  The relevant facts, procedural history and contentions of the parties are set out in our August 16, 2000, opinion herein, *Badon v. RJR Nabisco Inc.*, 234 F.3d 382 (5th Cir. 2000), issued in connection with our certification of the controlling issue of law to the Supreme Court of Louisiana.  By order issued November 27, 2000, the Louisiana Supreme Court declined to accept the certification (Chief Justice Calagero and Justice Lemmon would grant certification).

As noted in our prior opinion, the instant suit, originally filed in a Louisiana court in May 1994, is on account of personal injury to Carrie Badon, who allegedly incurred throat cancer, diagnosed in 1993, as a result of having smoked cigarettes manufactured and/or sold by defendants.  The suit alleges that Badon smoked cigarettes for approximately forty years and "became addicted to them."  There are numerous named defendants, principally cigarette manufacturers and their parents and affiliates.  Plaintiffs are all Louisiana citizens, and it is conceded that the amount is controversy exceeds $75,000.00 and that all defendants are diverse save only two Louisiana corporations which are cigarette wholesalers.  No retailers were sued. Defendants removed the action on grounds of diversity of citizenship, contending that the Louisiana wholesaler defendants were fraudulently joined.  Plaintiffs filed an unverified motion to remand contending that the case was not timely removed, and that

2

the joinder of the Louisiana wholesalers was not fraudulent because they had alleged valid causes of action against the Louisiana wholesalers on the basis of redhibition under La. Civ. Code arts. 2520, 2524 and 2531, breach of warranty under La. Civ. Code art. 2475, and conspiracy under La. Civ. Code art. 2324 (characterized by plaintiffs as "an agreement between all defendants to manipulate nicotine in cigarettes with the intent to addict Carrie Badon"). In reference to the redhibition and article 2475 breach of warranty claims, it was not alleged that Badon purchased cigarettes from either of the wholesalers, but rather that she purchased them from retailers who had acquired them from the wholesalers. Defendants filed their opposition to motions to remand, supported, *inter alia*, by affidavits of officers of the Louisiana wholesalers denying the allegations of conspiracy and averring, among other things, that they sold the cigarettes unaltered in the original labeled and sealed packages in which they received them from the manufacturers, had nothing to do with their design, manufacture, content, packaging or labeling, and had no specialized or superior knowledge not available to the general public, and made no representations to the public or any plaintiff, concerning nicotine levels in cigarettes, or nicotine addiction or health risks associated with smoking. Plaintiffs filed an unverified reply to defendants' opposition to the motion to remand, contending only that the removal was untimely and that recovery against the Louisiana

3

wholesalers on the basis of redhibition or breach of warranty was possible even though there was no privity between them and plaintiffs. Neither plaintiffs' motion to remand nor their reply to defendants' opposition thereto was supported by any affidavit or other summary judgment type evidence.[1]

The district court denied the motion to remand, ruling that the removal was timely and that the Louisiana wholesalers were fraudulently joined. The court noted that the only bases of recovery asserted against the Louisiana wholesalers were redhibition, breach of warranty of fitness, and conspiracy. As to conspiracy, the court held that, on the basis of the defendants' affidavits and "in light of plaintiffs' lack of evidence," there was no reasonable possibility of recovery against the Louisiana wholesalers. The court likewise reached the same ultimate conclusion as to the redhibition and breach of warranty claims, holding that the asserted defects in the cigarettes was not redhibitory or within article 2475, that La. Civ. Code art. 2521 barred recovery because the dangers of smoking should have been discovered by a reasonably prudent buyer, and that the Louisiana wholesalers did not have a relationship to the consumer and the manufacturers which was analogous to that of the distributor

---

[1]The sole exception to this is that the motion to remand was supported by the affidavit of plaintiffs' attorney which merely attempted to explain why citation had initially been long withheld on the complaint.

4

defendant in *Media Production Consultants, Inc. v. Mercedes Benz of North America*, 262 So. 2d 377 (La. 1972).

Plaintiffs did not seek reconsideration, but moved the district court to certify its ruling denying the motion to remand for interlocutory appeal under 28 U.S.C. § 1292(b). The district court did so, and we granted leave to appeal.

In our prior opinion, we affirmed the district court's rulings that the removal was timely and that the conspiracy claim against the Louisiana wholesalers was fraudulently joined because there was no reasonable possibility of recovery thereon. *Badon*, 224 F.3d at 388-94. We reaffirm those holdings.

That left as the sole and determinative issue on appeal whether it was demonstrated that plaintiffs had no reasonable possibility of recovery on their articles 2520, 2524 and 2531 redhibition claim, and their article 2475 breach of warranty claim, against the Louisiana wholesalers.[2] We held that resolution of this issue depended on answers to one or more of the following three questions of Louisiana law as to which it appeared to us that there are no clear controlling precedents in the decisions of the Louisiana Supreme Court, namely: (1) whether the fact that smoking cigarettes has serious adverse health affects and is addictive

---

[2]As we observed, *Badon*, 224 F.3d at 394 n.18, plaintiffs have consistently made it clear that, apart from their conspiracy claim, they did not and do not seek to impose liability on the Louisiana wholesalers on the basis of tort or products liability.

constitutes a redhibitive defect in the cigarettes or a defect warranted against under article 2475; (2) whether it is judicially known that at the relevant time there was such common knowledge of the adverse affects of cigarette smoking as to preclude such redhibition and article 2475 claims; and (3) whether the lack of privity between the Louisiana wholesalers and Badon precludes her redhibition and article 2475 claims against those wholesalers who were not, and did not with respect to consumers occupy the position of, manufacturers of the cigarettes.[3] We accordingly certified the following question of Louisiana law to the Supreme Court of Louisiana:

> "Does a consumer of cigarettes, who, without actual knowledge of their addictiveness or of all their health risks, purchased them at retail and smoked them from about age sixteen in 1953 until 1993, and, as a result, became addicted to them, suffered cancer diagnosed in 1993, and filed suit within a year thereafter, state with respect to such purchases a claim for either redhibition or for breach of warranty under article 2475, on the basis of the fact that smoking cigarettes is addictive and seriously harmful to health, as against the wholesale distributors of those cigarettes with whom the consumer was not in privity and who did not manufacture, or occupy as to the consumer the position of manufacturer of, the cigarettes, or hold themselves out as such, who sold the cigarettes only in the unaltered original sealed and labeled containers received from the manufacturers, who made no representations respecting whether smoking

_____

[3]We held that under the undisputed summary judgment type evidence there was no reasonable possibility of plaintiffs being able to recover in redhibition or under article 2475 on the basis that the Louisiana wholesalers occupied, vis-a-vis the consumer, the position of manufacturer in the same (or an analogous) sense as did the defendant distributor in *Media Production Consultants, Inc.* We reaffirm that holding.

6

presented health risks or was addictive, and who neither had nor claimed any greater knowledge concerning the asserted defects in the cigarettes than that available to members of the general public through the public media?"

As noted, the Louisiana Supreme Court declined the certification.

Since the Louisiana Supreme Court declined the certificate, the certified question is, in a sense, back before us.  However, it is important to note the context in which it is presented to us, namely the context of a claim of fraudulent joinder as it bears on removal jurisdiction.  In that context, as we explained in *Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172 (5th Cir. 1968), we approach the matter somewhat differently than we would in other contexts, where we simply make the best determination that we can as to how the state courts would ultimately resolve the issue. In *Bobby Jones Garden Apartments, Inc.*, we observed:

"Unlike the parties who joust for victory on who wins or loses our sole concern is: Who tries this case.  State or Federal Court?  For to us we cannot escape the problem of removability."  *Id.*, 391 F.2d at 175 . . .

"This is an *Erie* problem in part, but only part.  In the usual diversity situation a Federal Court, no matter how difficult the task, must ascertain (and then apply) what the state law is. [citations omitted] But here the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved. . . .

Thus we get to the question: Is there a reasonably good chance that Florida today will hold the Agent to some liability?"  *Id.*, 391 F.2d at 176-77.

*See also Parks v. New York Times Company,* 308 F.2d 474, 479 (5th

7

Cir. 1962) ("whether there was a reasonable basis in law and fact" for the claim); *Tedder v. F.M.C. Corporation*, 590 F.2d 115, 117 (5th Cir. 1979) ("If there is no arguably reasonable basis for predicting that state law might impose liability on the resident defendants under the facts alleged, then the claim is deemed fraudulent. . ."; removal proper because "there is no such reasonable basis for predicting that the [plaintiff] could prevail under Louisiana law as it stands today"); *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812, 816 (5th Cir. 1993) ("If there is 'arguably a reasonable basis for predicting that the state law might impose liability on the facts involved', then there is no fraudulent joinder"); *Burden v. General Dynamics Corp.*, 60 F.3d 213, 217 (5th Cir. 1995) ("whether, 'as a matter of law, there [is] no reasonable basis for predicting that plaintiff might establish liability against a named in-state defendant in state court'"); *Fields v. Pool Offshore, Inc.*, 182 F.3d 353, 357 (5th Cir. 1999) (claim as to defendant is fraudulent, so as not to prevent removal, where court "determines, after resolving 'all disputed questions of fact and any ambiguities in the current controlling substantive law in plaintiff's favor' that there is 'no reasonable basis for predicting that the plaintiff might establish liability'" against that defendant).[4]

---

[4]Plaintiffs appear to argue that *any mere theoretical possibility* of recovery under local law–no matter how remote or fanciful–suffices to preclude removal. We reject this contention.

If the Louisiana Supreme Court had accepted the certificate and answered the certified question in the negative, we would, of course, know that there is not arguably any reasonable basis for predicting that plaintiffs might establish liability against the in-state defendants on the redhibition and article 2475 claims.[5] However, the Louisiana Supreme Court declined the certificate. We are thus thrown back on our own resources. Our prior opinion reviews and analyzes the Louisiana authorities on these issues. *Badon*, 224 F.3d at 394-400. No good purpose would be served by repeating that exercise. We conclude that there is arguably a reasonable basis for predicting that plaintiffs might establish redhibition or article 2475 liability against the Louisiana wholesalers under Louisiana law as it stands today-i.e., that there is arguably a reasonable basis for predicting that under Louisiana law as it stands today the answer to the certified question is "yes." Lest we be misunderstood, we stress that we are *not* predicting that the Louisiana Supreme Court would or even probably would actually so hold or that in our opinion Louisiana law *does* indeed afford plaintiffs a redhibition or article 2475 claim

---

As the cited authorities reflect, there must at least be arguably a *reasonable* basis for predicting that state law would allow recovery in order to preclude a finding of fraudulent joinder.

[5]Conversely, if the Louisiana Supreme Court had answered the certified question in the affirmative we would know that there is at least a reasonable basis for predicting that plaintiffs might establish liability against the in-state defendants on those claims.

9

against the wholesalers in these circumstances. As the cited passages of our prior opinion reflect, Louisiana law on these points is simply not reasonably clear. We may well tend to believe that the probabilities ultimately favor Louisiana *denying* redhibition or article 2475 recovery against the wholesalers in these circumstances. That might well be our best *Erie* guess. But that is not the issue before us in this fraudulent joinder removal case. What we do hold is that there is at least an arguably reasonable basis for predicting that Louisiana would allow redhibition or article 2475 recovery against the wholesalers.

For this reason, we hold that the district court erred in denying the motion to remand. We accordingly remand the case to the district court for further proceedings consistent herewith.

REMANDED

10