RHESA HAWKINS BARKSDALE, Circuit Judge,
concurring in part and dissenting in part:
For this 28 U.S.C. § 1292(b) interlocutory appeal from a remand-denial because of improper joinder, I concur in part TV.A of the majority opinion (holding the absence of consent by in-state defendants Flores and Trevino did not render Union Pacific’s removal invalid). In parts IV.B and C, the majority does not decide: whether the failure of the in-state defendants to plead the unlawful-acts rule bars Union Pacific from relying on it; and whether the unlawful-acts rule is preempted by Tex. Civ. PRAC. & Rem.Code § 93.001(a)(1). Although I would answer *245 both questions in the negative, my dissent is limited to the issues decided by the majority in parts IV.D (interpreting and applying Texas’ unlawful-acts rule to claims against Flores and Trevino) and E (applying that rule for claims against Union Pacific). Because I disagree with the majority’s improper-joinder analysis, I must respectfully dissent from those two parts.
Despite, or perhaps because of, its exhaustive analysis of Texas caselaw, the majority’s improper-joinder analysis loses sight of the proverbial forest for its trees. Its in-depth discussion of Texas’ unlawful-acts rule fails, inter alia, to give effect to the very sound public policy underlying it. Along that line, the majority’s application of our court’s controlling improper-joinder test, stated by our en-banc court in Smallwood v. Illinois Central Railroad Co., 385 F.3d 568 (5th Cir.2004), is overly, and erroneously, restrictive. Therefore, essentially for the reasons stated by the district court, I would affirm: (1) its dismissal of Flores and Trevino on improper-joinder grounds; and (2) its denial of plaintiffs’ motion to remand to state court. Rico v. Flores, 405 F.Supp.2d 746 (S.D.Tex.2005).
I.
Although the district court, by a 6 May 2005 order, allowed the parties to begin discovery, it does not appear it was commenced. Accordingly, the relevant facts come from the operative complaint.
This wrongful-death action arises out of the deaths of ten illegal aliens (decedents) who entered into an illegal agreement to pass undetected through the Sarita, Texas, border-patrol checkpoint, in violation of United States immigration laws. Plaintiffs’ complaint states, inter alia: eo-con-spirator Flores, a Union Pacific employee, helped the decedents cross into the United States and hid them from the authorities; Flores accepted a monetary fee from the decedents in exchange for his allowing them to stow away on a Union Pacific railcar; and Flores and co-conspirator Trevino (in-state defendants) loaded the decedents onto that railcar, promising them safe passage beyond the border.
II.
Union Pacific, the diverse defendant, removed this action to federal court on the basis that the in-state defendants were joined improperly to prevent such removal. See 28 U.S.C. § 1441(b) (an action for which there is diversity jurisdiction, as in the action at hand, “shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought” (emphasis added)). Smallwood adopted the following for the applicable improper-joinder inquiry for such a situation, explicitly rejecting all others:
[WJhether the defendant has demonstrated that there is no possibility of recovery by the plaintiff against an instate defendant, which stated dijferently means that there is no reasonable basis for the district court to predict that the plaintiff might be able to recover against an in-state defendant.
385 F.3d at 573 (emphasis added). “In making this legal determination, we are obliged to resolve any contested issues of material fact, and any ambiguity or uncertainty in the controlling state law, in [plaintiffs’] favor.” Griggs v. State Farm Lloyds, 181 F.3d 694, 699 (5th Cir.1999). As repeated in Smallwood, however, “[a] ‘mere theoretical possibility of recovery under local law’ will not preclude a finding of improper joinder”. Id. at 573 n. 9 (quoting Badon v. RJR Nabisco, Inc., 236 F.3d 282, 286 n. 4 (5th Cir.2000)). Further, Smallwood adopted a second step for improper-joinder inquiries:
*246 When a nonresident defendant’s showing that there is no reasonable basis for predicting that state law would allow recovery equally disposes of all defendants, there is no improper joinder of the in-state defendant. In such a situation, the entire suit must be remanded to state court.
Id. at 571 (emphasis added). These two steps are addressed in turn.
A.
For the first step, the unlawful-acts rule applies in this wrongful-death action and results in there being “no reasonable basis ... to predict ... plaintiff[s] might be able to recover against [the] in-state defendants”. Id. at 573. Accordingly, I would affirm Flores and Trevino’s dismissal on improper-joinder grounds.
1.
The decedents engaged willingly in criminal conduct that, tragically, lead to their deaths. Along that line, Flores pleaded guilty to conspiring to transport illegal aliens, in violation of 8 U.S.C. §§ 1324(a)(l)(A)(ii), (a)(l)(v)(I). United States v. Flores, No. CR M-03-661 (S.D. Tex. 1 August 2003). The district court took judicial notice that Trevino pleaded guilty to a similar § 1324 offense. Rico, 405 F.Supp.2d at 752. Despite acknowledging decedents’ criminal conduct, the majority, resting heavily on several perceived “exceptions” to the unlawful-acts rule, “cannot say with any certainty that the Texas courts would apply the unlawful acts rule to a wrongful death claim”. Maj. Opn. at 242. This conclusion is flawed in several respects.
First, it ignores well-settled Texas law regarding wrongful-death claims. Texas’ wrongful-death act “applies only if the individual injured would have been entitled to bring an action for the injury if he had lived”. Tex. Crv. PRAC. & Rem.Code § 71.003(a). Accordingly, any defense which would have defeated the decedent’s claim likewise defeats that of his wrongful-death beneficiary. E.g., Slaughter v. Southern Talc Co., 949 F.2d 167, 173 (5th Cir.1991) (“Plaintiffs in a [Texas] wrongful death action are in the procedural shoes of the decedent, and defenses to the decedent’s personal injury action are defenses to the wrongful death plaintiffs’ claim.”); Diaz v. Westphal, 941 S.W.2d 96, 98 (Tex.1997) (“The right to maintain such actions ‘is entirely derivative of the decedent’s right to have sued for his own injuries immediately prior to his death, and is subject to the same defenses to which the decedent’s action would have been subject.’ ” (quoting Russell v. Ingersoll-Rand Co., 841 S.W.2d 343, 347 (Tex.1992))).
Moreover, as the majority acknowledges, “[t]here are several cases in which a Texas court declared enforcement of the unlawful acts rule to be a matter of public policy”. Maj. Opn. at 240 n.3. Nevertheless, the majority’s erroneous conclusion about the rule’s application in a wrongful-death action contravenes the reasonable and oft-stated rationale for that rule: “[P]ublic policy bars recovery for injuries arising from a knowing and willful crime”. Saks v. Sawtelle, Goode, Davidson & Troilo, 880 S.W.2d 466, 470 (TexApp.—San Antonio 1994, writ denied). See also Ward v. Emmett, 37 S.W.3d 500, 502 (TexApp.—San Antonio 2001, no pet.) (“Courts ... have used this rule, along with public policy principles, to prevent a plaintiff from recovering damages that arose out of his or her own illegal conduct.”); Dover v. Baker, Brown, Sharman & Parker, 859 S.W.2d 441, 451 (TexApp.—Houston [1st Dist.] 1993, no writ) (“[W]here [plaintiff] was a knowing and wilful party to the illegal acts which contributed to his injury, public policy clearly bars him from bring *247 ing suit to recover damages resulting from those acts.”); Houston Ice & Brewing Co. v. Sneed, 63 Tex.Civ.App. 17, 132 S.W. 386, 388 (Tex.Civ.App.1910, writ denied) (“it is against public policy to allow redress for any agreement or act in violation of law”).
In the light of the rule’s compelling public-policy rationale, it is not surprising that it has been stated broadly. See, e.g., Stevens v. Hallmark, 109 S.W.2d 1106 (Tex. Civ.App.—Austin 1937, no writ) (“no legal right, which will form the basis of a cause of action, arises out of an unlawful act; and ... no such alleged right can be asserted in the courts, the foundation of which must be predicated upon the admittedly unlawful act of the party asserting it” (emphasis added)). Most importantly, it is not surprising that the rule, which has been applied in actions sounding in both contract and tort, appears to apply regardless of the type claim raised. As the Texas Court of Civil Appeals stated in Houston Ice:
To refuse such ... damages on a contract of indemnity because against public policy, and to allow the recovery of such ... damages because founded on deceit, is merely to change the form of the action, and by such indirection to nullify the principle. If it is against public policy and void in one form of action, no good reason exists why it should not be equally so in the other, as having in each suit the tendency to interfere with the due administration of the law.
132 S.W. at 388.
In sum, particularly given the sound public policy underlying the unlawful-acts rule, there is “no reasonable basis” to predict a Texas court would not apply it in this action.
2.
Because the unlawful-acts rule is applicable to this wrongful-death action, the above-stated controlling inquiry for improper joinder in this action is “whether ... there is no reasonable basis for the district court to predict ... plaintiff[s] might be able to recover against [Flores and Trevino]”. Smallwood, 385 F.3d at 573 (emphasis added). If such reasonable basis is lacking, there is improper joinder.
The majority, relying on perceived “ambiguities” surrounding the unlawful-acts rule, concludes it cannot “say ... [plaintiffs have no possibility of recovery from Flores and Trevino”. Maj. Opn. at 244. This conclusion, however, ignores the alternative in our controlling test. As discussed, Smallwood equates “no possibility of recovery” with “no reasonable basis”. The majority, however, seemingly substitutes an “absolutely no basis” requirement for the “no reasonable basis” requirement. In any event, even assuming arguendo the existence of such “ambiguities”, to be resolved in plaintiffs’ favor, they establish, at most, the above-discussed “mere theoretical possibility of recovery under local law [, which] will not preclude a finding of improper joinder”. Smallwood, 385 F.3d at 573 n. 9 (quotation omitted) (emphasis added).
In stating the unlawful-acts rule, Texas courts have not always used precisely the same language. Nonetheless, it is clear that, “if the illegal act is inextricably intertwined with the claim and the alleged [injuries] would not have occurred but for the illegal act, the plaintiff is not entitled to recover”. Sharpe v. Turley, 191 S.W.3d 362, 366 (Tex.App.—Dallas 2006) (emphasis added). As alleged in the complaint, plaintiffs’ claims against Flores and Trevino are based on their: loading the decedents into a railcar from which they would be unable to escape; locking it from the *248 outside; failing to warn the decedents of their inability to unlock it; failing to timely release them; and failing to inform others that the decedents were locked in it. It cannot reasonably be suggested that the decedents’ illegal agreement to violate United States immigration laws — the sole reason for their presence in the railcar— was not “inextricably intertwined” with their tragic deaths; rather, plaintiffs’ claims arise directly out of that illegal agreement.
As discussed, “[Texas] public policy bars recovery for injuries arising from a knowing and willful crime”. Saks, 880 S.W.2d at 470. In the light of that public policy, and regardless of the specific formulation of the unlawful-acts rule, there is “no reasonable basis” to predict plaintiffs might be able to recover against Flores and Trevino.
B.
Because there is “no reasonable basis” of recovery against the in-state defendants, resulting in their joinder being improper, Smallwood’s earlier-quoted second step must be addressed: whether the unlawful-acts rule “equally disposes of all defendants”. 385 F.3d at 571 (emphasis added). If so, notwithstanding the improper joinder, the action must be remanded to state court. Id. Although the majority does not explicitly make this determination, its opinion indicates that, because the unlawful-acts rule does not dispose of all of plaintiffs’ claims against Union Pacific, remand to state court would not be required under this second step.
As analyzed by the majority opinion at 236 plaintiffs presented claims against Union Pacific for, inter alia, premises liability. Along that line, and as the majority acknowledges, “Texas courts have repeatedly held that a landowner owes a duty to a trespasser ‘to refrain from injuring the trespasser willfully, wantonly, or through gross negligence’ ”. Maj. Opn. at 242 (quoting State v. Shumake, 199 S.W.3d 279, 285 (Tex.2006)). Because Texas courts have done so without mention of the unlawful-acts rule, this landowner’s duty appears to exist independently of any illegal act by the trespasser (other than the trespass itself). Accordingly, the unlawful-acts rule would arguably not bar plaintiffs’ premises-liability claim, regardless of the decedents’ illegal agreement. See Macias v. Moreno, 30 S.W.3d 25, 29 (Tex. App. — El Paso 2000, pet. denied) (“if a party can show a complete cause of action without [having] to prove their own illegal act, although the illegal act may appear incidentally ..., they may recover”).
Consistent with the district court’s ruling, the majority acknowledges: “[I]t appears that the unlawful acts rule does not apply to cases where the unlawful act in question was trespass”. Maj. Opn. at 241-243 (emphasis added). A Texas court might find the decedents’ illegal acts “inextricably intertwined” with their premises-liability claim and thus apply the unlawful-acts rule to bar recovery on it. See Maj. Opn. at 243-244. This, however, is the same type of “mere theoretical possibility”, discussed supra, that does not require remand under this second step for improper-joinder analysis.
III.
Pursuant to Smallwood’s two-step test, primarily at issue in this interlocutory appeal is: (1) whether there is “no reasonable basis for the district court to predict ... plaintiff[s] might be able to recover against [the] in-state defendant^]”, 385 F.3d at 573; and (2) if “no reasonable basis” exists, whether that showing disposes of the claims against all defendants, id. *249 at 571. Because there is “no reasonable basis” and that showing does not dispose of all claims against Union Pacific, I would affirm both the district court’s dismissal of Flores and Trevino and its denial of remand to state court.
As instructed by Smallwood, “[t]he doctrine of improper joinder implements our duty to not allow manipulation of our jurisdiction”. Id. at 576 (emphasis added). In the light of the sound public policy for the unlawful-acts rule, it is obvious plaintiffs engaged in such proscribed manipulation. It is our duty to prevent it. Accordingly, I respectfully dissent.